IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CAIR FOUNDATION, INC., d/b/a COUNCIL ON AMERICAN-ISLAMIC RELATIONS, & CAIR, | Civil No.:  0:21-cv-01267 (SRN/TNL) |
| Plaintiff, | |
| v. | **DEFENDANT LORI SAROYA'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** |
| ASMA LORI HAIDRI SAROYA a.k.a. LORI SAROYA, ASMA SAROYA, LORI HAIDRI, LORI HAIDRI-SAROYA, & LH, | |
| Defendant. | |

## INTRODUCTION

Plaintiff CAIR Foundation, Inc., d/b/a Council on American-Islamic Relations, & CAIR ("CAIR") claims that Defendant Lori Saroya ("Saroya") defamed it, and claims that those statements which it contends are actionable as defamation interfered with its business relations. Courts routinely apply Rule 12(c) when it is apparent on the face of the complaint that the allegations, taken as true, cannot survive legal scrutiny. *See, e.g.*, *Syverson v. FirePond, Inc.*, 383 F.3d 745, 749-50 (8th Cir. 2014) (affirming dismissal of negligent misrepresentation and fraud claims that failed as a matter of law on Rule 12(c) motion); *Thach v. Tiger Corp.*, 609 F.3d 955, 957-58 (8th Cir. 2010) (affirming dismissal of product liability case on Rule 12(c) motion where applicable statute of limitations had run); *Flora v. Firepond, Inc.*, 260 F. Supp. 2d 780, 789 (D. Minn. 2003), *aff'd*, 383 F.3d 745 (8th Cir. 2004) (dismissing securities claims pursuant to Rule 12(c) where applicable statute of

limitations had run); *McGuire v. Indep. Sch. Dist. No. 833*, 146 F. Supp. 3d 1041, 1048 (D. Minn. 2015), *aff'd*, 863 F.3d 1030 (8th Cir. 2017) (dismissing constitutional due process claims following defendant's Rule 12(c) motion).

Saroya brings this motion under Rule 12(c) because (1) on their very face, many of the claims for defamation are based on statements which are barred by Minnesota's two (2) year limitations period; (2) most, if not all, of the supposedly actionable statements are non-actionable as a matter of well-settled First Amendment law because they do not qualify as statements of objectively verifiable fact but are rather protected opinion; (3) none of the statements which cannot be actionable either under the statute of limitations or under the First Amendment can form the basis for tortious interference with business relations; (4) as a matter of law, the allegations which purport to form the basis for a claim for tortious interference do not do so in any event; and (5) CAIR's claim for injunctive relief fails to state a claim and seeks an order that would be an unconstitutional prior restraint. For these reasons, Saroya respectfully requests that the Court dismiss CAIR's defamation claims (Counts I and II), tortious interference claim (Count III) and injunctive relief claim (Count V) in their entirety.

## **BACKGROUND**[1]

CAIR's claims are based on allegations of a series of defamatory email communications, online postings and online articles starting in June 2018. (*See* Compl.

---

[1] Saroya denies any allegation of misconduct in CAIR's Complaint. (*See* Def. Lori Saroya's Answer to the Compl. dated June 11, 2021 [Dkt. #5].) Nevertheless, this Memorandum assumes the truth of the allegations contained in the Complaint.

dated May 21, 2021 [Dkt. #1] ("Compl.") ¶¶ 52-165.)  CAIR further alleges that Saroya made comparable statements to CAIR's "partners, donors, and religious leaders" in targeted messages and emails.  (*Id.* ¶¶ 126-38, 142-47, 154-61.)  CAIR alleges that "[a]s a result of Saroya's statements, CAIR has lost multiple partners, donors, and religious leaders."  (*Id.* ¶ 162.)  CAIR does not, however, allege the identity of any specific partner, donor or religious leader that it purportedly lost as a result of Saroya's conduct.  (*See, generally*, *id.*)

On May 21, 2021, approximately three years after CAIR alleges Saroya began her "smear campaign," CAIR commenced this action.  Saroya now moves for judgment on the pleadings, seeking dismissal of Count I (Defamation), Count II (Defamation Per Se), Count III (Tortious Interference with Business Relationships) and Count V (Injunctive Relief) in their entirety.

## I.    JUDGMENT PURSUANT TO RULE 12(c) IS APPROPRIATE WHERE THE GOVERNING LAW COUPLED WITH THE PLAIN TERMS OF THE COMPLAINT REQUIRES DISMISSAL.

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law."  *Syverson*, 383 F.3d at 749.  "When evaluating the merits of a motion for judgment on the pleadings, the district court applies the same legal standard that applies to a motion to dismiss."  *Satanic Temple v. City of Belle Plaine, Minn.*, 475 F. Supp. 3d 950, 957 (D. Minn. 2020) (citation omitted).

II.   **CAIR'S DEFAMATION AND TORTIOUS INTERFERENCE CLAIMS (COUNTS I, II AND III) ARE TIME-BARRED TO THE EXTENT THEY ARE BASED ON STATEMENTS OCCURRING BEFORE MAY 21, 2019.**

Judgment on the pleadings is particularly appropriate when claims are time-barred under the applicable statutes of limitations. *Scott Breuer Constr., Inc. v. Koch*, No. 12-3182, 2014 WL 2893200, at *1-3 (D. Minn. June 26, 2014) (dismissing with prejudice time-barred copyright claims on a Rule 12(c) motion for judgment on the pleadings); *Edwards v. Wyeth, Inc.*, No. 07-3921, 2008 WL 1908907, at * 2-5 (D. Minn. Apr. 25, 2008) (dismissing warranty, Minnesota Consumer Protection Act, intentional infliction of emotional distress and other claims as time-barred on a Rule 12(c) motion). Here, a significant number of the allegations purportedly supporting Count I (Defamation), Count II (Defamation Per Se) and Count III (Tortious Interference with Business Relationships) occurred <u>outside</u> the actionable period under the applicable two-year statute of limitations. The Court should thus grant judgment on the pleadings to the extent CAIR's Complaint alleges statements made prior to May 21, 2019. *Fredin v. Kreil*, No. 20-01929, 2020 WL 7427048, at *2-3 (D. Minn. Dec. 18, 2020) (dismissing defamation claim based on Facebook post made more than two years before the commencement of the action).

A.   **Statements Made More Than Two Years Before The Date Of CAIR's Complaint Cannot Form The Basis Of Actionable Defamation Claims.**

Counts I and II of CAIR's Complaint purport to state claims for defamation and defamation per se. (Compl. ¶¶ 166-87.) There is a two-year statute of limitations for defamation claims under Minnesota law. Minn. Stat. § 541.07(1). Accordingly, any statement CAIR alleges was made more than two years prior to the filing of its Complaint

(i.e., before May 21, 2019) cannot form the basis for an actionable defamation claim.  *See Rassier v. Sanner*, 996 F.3d 832, 838 (8th Cir. 2021) (affirming summary judgment for defendant on a defamation claim based on a statement made more than two years prior to the commencement of the action); *Fredin*, 2020 WL 7427048, at *2-3.

At least 40 paragraphs in CAIR's Complaint relate to statements made before May 21, 2019, none of which can form the basis for an actionable claim under the applicable two-year statute of limitations.  The communications they relate to are those alleged at:

- Paragraphs 54-63, relating to June 2018 emails to staff members of CAIR chapters on the subject of CAIR's use of grant funds (Compl. ¶¶ 54-63, Ex. C);

- Paragraphs 64-66, relating to an October 18, 2018 communication with Silicon Valley Community Foundation requesting an investigation into CAIR's use of grant funding (*id.* ¶¶ 64-66, Ex. D);

- Paragraphs 72-76, relating to a Facebook post "in the fall of 2018" about unpaid wages, bonuses and reimbursements (*id.* ¶¶ 72-76);

- Paragraph 77, relating to "several posts in the summer and fall of 2018 claiming that CAIR owed her unpaid wages" (*id.* ¶ 77);

- Paragraphs 79-81, relating to a Facebook post in that summer/fall 2018 time period about CAIR failing to pay monies owed, and about gender discrimination, religious discrimination, sexual harassment, retaliation, hostile work environment, union busting, financial mismanagement, lack of board oversight and board incompetence (*id.* ¶¶ 79-81);

- Paragraphs 82-83, relating to a September 2018 Facebook post about dysfunction and abuse at CAIR (*id.* ¶¶ 82-83);

- Paragraphs 84-87, relating to a September 2018 publication on one of Saroya's personal pages, and on the page of CAIR-Oklahoma's Executive Director, about CAIR being mismanaged and ineffective, and having corrupt leaders (*id.* ¶¶ 84-87);

- Paragraphs 88-89, relating to a September 30, 2018 post about CAIR-National's leaders being perpetrators of injustice and indicating that CAIR had discriminated against, harmed and abused employees (*id.* ¶¶ 88-89);

- Paragraphs 90-91, relating to a February 2019 Facebook post about unpaid wages, bonuses and reimbursements (*id.* ¶¶ 90-91); and

- Paragraphs 92-94, relating to March 4 and 5, 2019 Facebook posts about Saroya's experiences at CAIR. (*Id.* ¶¶ 92-94.)

The Court should dismiss as time-barred CAIR's purported defamation claims to the extent that they are based on the statements alleged in Paragraphs 54-94 of the Complaint.

## B. Statements Made More Than Two Years Before The Date Of CAIR's Complaint Also Cannot Form The Basis For An Actionable Tortious Interference Claim.

Count III of CAIR's Complaint purports to state a claim for tortious interference with business relationships. (*Id.* ¶¶ 188-93.) It is premised entirely on the allegation that Saroya made defamatory statements to CAIR's partners, donors and religious leaders in an effort to get them to discontinue relationships with CAIR. (*Id.* ¶ 190 ("Saroya intentionally and improperly interfered with CAIR's prospective business relationships by using her defamatory communications to induce CAIR's partners, donors, and religious leaders identified above to discontinue their existing relationships with CAIR.").) A tortious interference with business relations claim that is premised on a defamation claim is also subject to a two-year statute of limitations under Minnesota law. *RG Golf Warehouse, Inc.*, No. 19-0585, 2019 WL 4016169, at *3 (D. Minn. Aug. 26, 2019) (holding that "[i]f the conduct underlying a tortious interference claim arises from defamation . . . the 2-year statute of limitations applies" and dismissing tortious interference with contract claim as

time-barred); *Ruolo v. Keystone Shipping Co.*, No. 17-5538, 2018 WL 4901085, at \*20-21 (D. Minn. Aug. 10, 2018) (holding that a two-year statute of limitations applied to a tortious interference with prospective economic advantage claim that stemmed from an assertion of allegedly defamatory statements and dismissing tortious interference claim as time-barred); *Wild v. Rarig*, 234 N.W.2d 775, 793 (Minn. 1975) (holding that a claim for tortious interference with business relationships "by means of defamation is essentially part of [a] cause of action for defamation and consequently comes within Minn.St. 541.07, the 2-year statute of limitations"). The Court should thus dismiss Count III of CAIR's Complaint to the extent that it is based on the statements alleged in Paragraphs 54-94 of the Complaint.

**III.    THE COURT SHOULD DISMISS CAIR'S DEFAMATION AND TORTIOUS INTERFERENCE CLAIMS BECAUSE THEY ARE BASED ON STATEMENTS OF NON-ACTIONABLE OPINION, CAIR HAS NOT SPECIFICALLY IDENTIFIED THE PURPORTEDLY DEFAMATORY STATEMENTS, AND MANY OF THE ALLEGED STATEMENTS ARE PRIVILEGED.**

**A.    CAIR's Claims Are Based In Large Part On Statements of Non-Actionable Opinion.**

"Under Minnesota law, '[o]nly statements that present or imply the existence of fact that can be proven true or false are actionable' in defamation." *Gacek v. Owens & Minor Distribution, Inc.*, 666 F.3d 1142, 1147 (8th Cir. 2012) (quoting *Schlieman v. Gannet Minn. Broad., Inc.*, 637 N.W.2d 297, 308 (Minn. Ct. App. 2001)). As the United States Supreme Court has held, "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Milkovich v. Lorain J. Co*., 497 U.S. 1, 20 (1990). "Thus, if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than

claiming to be in possession of <u>objectively verifiable facts</u>, the statement is not actionable." *Gacek,* 666 F.3d at 1147 (quotation omitted, emphasis added); *see also Sherr v. HealthEast Care Sys.*, 416 F. Supp. 3d 823, 844 (D. Minn. 2019) ("The First Amendment protects expressions of opinion that cannot be reasonably interpreted as stating a fact and cannot be proven true or false"); *E. Coast Test Prep, LLC v. Allnurses.com, Inc*., No. 15–3705, 2017 WL 2242851, at *3 (D. Minn. May 22, 2017) (affirming Magistrate's order that social media comments regarding whether or not a service is redundant or obsolete "could not support a prima facie case of defamation because they were 'pure opinion . . . reflected the state of mind of the speaker, and were not verifiable'"); *D.B. Indy, L.L.C. v. Talisman Brookdale LLC*, No. 04–1023, 2004 WL 1630976, at *5 (D. Minn. July 20, 2004) (dismissing defamation claim based on defendant's statement to news outlet that "[w]e feel the way the store was presented to us was sort of like a bait-and-switch," holding statement was "not a provably false factual connotation"); *Alexander v. Strong*, No. A20-1614, 2021 WL 2645516, at *5 (Minn. Ct. App. June 28, 2021) (affirming dismissal of defamation claim on summary judgment, holding "the characterization of Alexander and his wife as 'bad' or 'dangerous' is the sort of inherently subjective description that Minnesota courts have held is incapable of being proven true or false").

Quite apart from the requirement that a statement be objectively verifiable in order to be actionable, "an opinion amounting to mere vituperation and abuse or rhetorical hyperbole . . . cannot be the basis for a defamation action." *Sherr*, 416 F. Supp. 3d at 844 (quoting *McKee v. Laurion*, 825 N.W.2d 725, 733 (Minn. 2013)).

"Whether a statement is an opinion or fact is question of law." *Id.* To the extent that CAIR's purported defamation claims are based on unverifiable, subjective statements or rhetorical hyperbole, those claims are subject to dismissal, as a number of cases decided by the Eight Circuit and this Court on facts comparable to the allegations made here demonstrate. *See Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*, 829 F.3d 576, 579 (8th Cir. 2016) (affirming dismissal of defamation claim which warned consumers to exercise caution when dealing with charity, where trial court held "no reasonable factfinder could ever find that the BBB stated anything other than the truth and its seemingly well-informed opinions about Others First"); *Fredin v. Clysdale*, No. 18-0510, 2018 WL 7020186, at *12 (D. Minn. Dec. 20, 2018) (dismissing defamation claim, holding that social media post which implied that plaintiff posed a risk to women's safety was non-actionable opinion); *Cenveo Corp. v. CelumSolutions Software GMBH & Co KG*, 504 F. Supp. 2d 574, 578 (D. Minn. 2007) (dismissing defamation claim, holding statement by former employee that customers should not use former employer for computer services was non-actionable opinion).

CAIR's Complaint is replete with allegations of defamation that are based entirely on statements that are not objectively verifiable as true or false, subjective critiques, and/or expressions of opinion. These statements include:

- "CAIR has a pattern of discriminating against and mistreating their own employees, especially women" and is marked by "gender and religious discrimination, sexual harassment, retaliation, hostile work environment, union busting, financial management, lack of board oversight, board incompetence, and other serious issues at CAIR." (Compl. ¶ 79; *see also id.* ¶¶ 78, 103, 109, 128, 131.) These statements are statements of opinion and Saroya's subjective views regarding the manner in which CAIR treated its

employees and/or the perceived lack of effective management and governance.

- "Donor funds are directly going to pay for attorneys to suppress, silence, and intimidate those who have been treated unjustly." (*Id.* ¶ 79; *see also id.* ¶¶ 82, 103, 109, 128.)  This is a statement of opinion regarding the manner in which CAIR treats individuals, like Saroya herself, through the use of its attorneys.

- Statements accusing CAIR-National of "dysfunction" and "abuse." (*Id.* ¶ 82; *see also id.* ¶ 107.)  This is a statement regarding Saroya's opinions that CAIR is dysfunctional and abusive, characteristics that are inherently subjective.

- "As you're considering which nonprofits to donate to, I want you to be diligent- do your research and ask the tough questions.  Is your money really helping to empower people in the community who have been discriminated against, or are you empowering a toxic entity that has a pattern of discriminating against its own employees and further victimizing people who seek their help?  Is your money going to pay an attorney to fight for people's rights to practice their faith or is your money going to pay an attorney to suppress, silence, and intimidate other Muslims who have been treated unjustly?  Are you supporting legitimate, sincere advocates for justice or those who support the status quo and are spineless when the injustice is committed by their own national leaders?" (*Id.* ¶ 82; *see also id.* ¶¶ 131, 146.)  These are rhetorical questions that do not purport to be statements of fact, and any implication that could be drawn from them would be a reflection of subjective belief.

- "#CAIR-National is a very mismanaged, ineffective organization with corrupt leaders." (*Id.* ¶ 84.)  This is a statement of opinion consisting of Saroya's perception that CAIR's leaders are corrupt, an inherently subjective term, and unable to effectively manage the organization, likewise a subject on which reasonable minds could differ.

- Statements claiming that leaders of CAIR-National are "perpetrators of injustice" and claiming that CAIR has harmed and engaged in abuses. (*Id.* ¶ 88; *see also id.* ¶ 103, 107, 109, 128, 131, 146.)  The concepts of harm, injustice and abuse are inherently subjective.  These are statements of Saroya's subjective beliefs.

- "[H]ow do[es CAIR] treat other people?  Did they also withhold wages, bonuses, and reimbursements from other employees after they resigned- people who weren't in a position to lose their money, didn't know their legal

rights, couldn't afford to hire an attorney, didn't know how to file with the EEOC or navigate the legal system, and just had too much to lose for speaking out? I fully recognize my privilege and my responsibility. Did I do what others (apart from the sincere people at CAIR-MN) are doing right now, look the other way while being fully aware of the dysfunction and incompetency at CAIR National?" (*Id.* ¶ 92.) These are rhetorical questions that do not purport to be statements of fact, and any implication that could be drawn from them would be a reflection of subjective belief.

- "I don't usually tell people this, but one year before I joined as an employee, I was on the CAIR National board. Quite frankly, it's embarrassing. I wish I could say that the most incompetent thing they did was forget to ask me to sign a confidentiality agreement as a new board member . . . . <u>In my opinion</u>, the CAIR National board does not provide proper oversight and governance to the organization. I question board dynamics and authority when the founder and executive director is a voting member of the board- and has been for the past 25 years. This leads to a culture where people don't feel ownership/authority and simply look the other way. Did the CAIR National board look the other way when CAIR national lost its 501c3 status for not filing 990s over several consecutive years? Did the CAIR National board look the other way when there were allegations of illicit affairs and temporary marriages? Did the CAIR National board look the other way when questionable expenses and random donations appeared on the organization's financial statements? Did the CAIR National board look the other way when three years of CAIR National's financial statements allegedly disappeared? Did the CAIR National board look the other way when a former staff member allegedly reimbursed the organization financially long after his employment at CAIR National ended? Did the CAIR National board look the other way when a board member literally fell asleep during several board meetings?" (*Id.* ¶ 92 (emphasis added).) These are all statements of opinion or rhetorical questions, not statements of objectively verifiable fact.

- "Chapters are very capable of standing up for justice, but they look the other way and do nothing when their national leaders are the perpetrators of injustice. Ultimately, nothing good can come out of the corruption and injustice. The community deserves a legitimate civil rights and Muslim organization that treats all people with the respect and dignity they deserve." (*Id.* ¶ 103; *see also id.* ¶¶ 128, 131.) These are statements of Saroya's opinion regarding injustice and corruption, which are inherently subjective concepts, and a statement of subjective belief regarding the kind of civil rights and Muslim organization that community members deserve.

- "I worked with CAIR in various capacities for 11 years, chapter founder, chapter executive director, national board member, and national chapter director and I'm convinced that CAIR creates more victims than it helps. It does more harm than good, whether it's the continuous negative portrayal of Muslims as victims in the media, lack of strategy, making serious mistakes on people's cases, providing inconsistent services, the all-male press conferences, failure to build a legitimate nationwide infrastructure, lack of community engagement on the national level, not having a seat at many tables despite being around for 25 years and having an office a few blocks from the US Capitol, and so much more." (*Id.* ¶ 107 (emphasis added); *see also id.* ¶¶ 88, 92, 116, 128, 131, 146.) This is a statement of opinion based on Saroya's experience with CAIR; whether CAIR negatively portrays Muslims, lacks strategy, makes mistakes in people's cases, and so forth are subjective beliefs, not objectively verifiable facts.

- A statement claiming that CAIR was an "incompetent and toxic organization," that does not speak on behalf of American Muslims and that "sexual abuse and exploitation" and "financial abuse and mismanagement" are among the "serious issues" that have been reported. (*Id.* ¶ 122.) This is a statement of opinion regarding CAIR's competence and culture, inherently subjective issues.

- "#CAIR is a corrupt and unethical organization that does not speak for American Muslims. A true civil rights organization would treat all people with the respect and dignity they deserve." (*Id.* ¶ 131.) This is an inherently subjective statement of opinion regarding CAIR's authority to speak for American Muslims and what people deserve in a civil rights organization.

- "CAIR does not speak for American Muslims and many will tell you that they only show up for the media. They are good at sending press releases and jumping on current events, but this does not translate into actual work and credibility in the community. We don't trust them to provide accurate information . . . . We don't know if this is a result of exaggeration, mismanagement, or miscommunication. What we do know is that there are trust, credibility, accuracy, and fairness issues when it comes to quoting CAIR in the media as a legitimate source or partnering with them." (*Id.* ¶ 155; *see also id.* ¶ 157.) These, too, are statements of subjective belief that are not capable of objective verification.[2]

---

[2] Paragraphs 139 through 161 of CAIR's Complaint make allegations regarding Saroya's communications with donors, religious leaders and partners. To the extent that CAIR alleges those communications are actionable, it bases that allegation on Saroya repeating

All of the above are statements which are not objectively verifiable as true or false, or an expression of Saroya's views and not reasonably understood otherwise, or rhetoric, or questions, or a combination of the foregoing. Accordingly, none of CAIR's allegations based to those statements can form the basis for a viable defamation claim. To the extent that CAIR's causes of action for defamation and tortious interference purport to rely on the communications of opinion alleged in Paragraphs 78, 79, 82, 84, 88, 92, 103, 107, 109, 116, 122, 128, 131, 146, 155 and 157 of the Complaint, the Court should dismiss them since the statements are not actionable as a matter of law.[3]

**B.    CAIR Has Failed To Specifically Identify Alleged Defamatory Statements.**

CAIR's defamation and tortious interference claims suffer from yet another fatal infirmity. They are based on lengthy communications, based principally on opinion, and CAIR does not adequately identify what portions of them are verifiable and thus the proper subject of a defamation claim. *See Clancy v. Vacationaire Estates, Inc.*, No. 18-2249, 2019 WL 955113, at *10 (D. Minn. Feb. 27, 2019) (dismissing defamation claims based on online reviews and comments regarding Plaintiff's restaurant, holding "Plaintiffs do not specify which parts of the alleged defamatory statements are false or constitute defamation.

---

to those third parties the other statements that form the basis for its purported claims. (*See* Compl. ¶ 158 ("Each of these email communications, sent to the individual representatives of CAIR's partners, donors, and religious leaders, of which there are numerous, repeats the same lies as those contained on her previous public Facebook posts.").)

[3] Saroya acknowledges that there are statements referenced in the Complaint which are arguably verifiable as true or false. (*See, e.g.*, Compl. ¶ 57 (discussing the use of grant money).) However, these statements are subject to dismissal on other grounds, as discussed herein. For example, the statements alleged in Paragraph 57 are time-barred.

**While portions of a few of the statements may be verifiable, most of the statements at issue are merely opinion.**") (emphasis added); *see also Carpenter v. Nw. Airlines, Inc.*, 47 F. App'x 424, 426 (8th Cir. 2002) ("Because Carpenter failed to identify which of Northwest's statements were defamatory, Carpenter's defamation claim fails."); *Smith v. Britton*, No. A13-1039, 2014 WL 349742, at *5 (Minn. Ct. App. Feb. 3, 2014) (affirming dismissal of defamation claim, holding "the plaintiff must specify which statements were defamatory and to whom the statements were made."). It is not enough to simply block quote a lengthy online post or email communication and state that it is defamatory. But that is largely what CAIR has done here. (Compl. ¶¶ 52-161.)

As but one example, CAIR alleges that the following Facebook post is defamatory:

Last year, I said goodbye to CAIR National and all their dysfunction and abuse- and resigned from my job as Chapter Director. It was the most empowering feeling- and I got a small glimpse into how people might feel when they finally end an abusive relationship, or get freed from prison, or leave a cult. But I should have known it was all too good to be true. I wasn't really free from CAIR because they withheld my pay, bonus, and reimbursements. Today, they still owe me over $20,000 in pay and reimbursements, plus attorney's fees. As you're considering which nonprofits to support and donate to, I want you to be diligent- do your research and ask the tough questions. Is your money really helping to empower people in the community who have been discriminated against, or are you empowering a toxic entity that has a pattern of discriminating against its own employees and further victimizing people who seek their help? Is your money going to pay an attorney to fight for people's rights to practice their faith or is your money going to pay an attorney to suppress, silence, and intimidate other Muslims who have been treated unjustly? Are you supporting legitimate, sincere advocates for justice or those who support the status quo and are spineless when injustice is committed by their own national leaders?

(*Id.* ¶ 82.) CAIR then alleges that "[a]t the time Saroya published the above statement, she knew the allegations contained therein were false or made with reckless disregard for their

truth or falsity." (*Id.* ¶ 83.) And while CAIR cursorily alleges that the post "accused CAIR-National of 'dysfunction' and 'abuse' and made similar accusations regarding her alleged unpaid wages," it does not specifically allege how the inherently subjective and opinion-based post is, or which portions of the post are, defamatory. (*Id.* ¶¶ 82-83.)

Similarly, CAIR makes allegations regarding a lengthy June 2020 Facebook post on the page of an entity called JetPac. (*Id.* ¶¶ 132-38.) It goes on to allege that "[a]t the time Saroya made these accusations, including these specific communications outlined above, she knew them to be false or acted with reckless disregard to their truth or falsity." (*Id.* ¶ 137.) But CAIR does not allege which of the statements – virtually all of which begin with the language "I'm angry because" and are thus inherently subjective – are false, or how. (*See id.* ¶¶ 132-38.)

CAIR then repeats this pattern by making allegations relating to a nearly three-page email sent to a representative of the National Affiliate of Muslim Lawyers. (*See id.* ¶¶ 144-46.) Again, CAIR makes a conclusory statement that "[a]t the time Saroya published the diatribe to the representative, she knew the allegations contained therein were false or made them with reckless disregard for their truth or falsity." (*Id.* ¶ 147.) Apart from the allegation that "CAIR 'was aware of a pattern of discrimination and abuse inside CAIR' and did nothing to investigate the allegations, was false," though, CAIR does not specify what parts of the alleged email are purportedly defamatory. (*See id.* ¶¶ 144-54.)

As yet another example, CAIR alleges a communication in which Saroya indicated in a comment:

> CAIR shouldn't have signed onto this. They need to focus on their own internal issues, whether it is a lack of transparency around international funding through their Washington Trust Foundation, financial mismanagement and board incompetence (to the point of not filing 990s for several years in a row and losing their 501c3 status), sexual abuse and harassment, religious discrimination, union busting, retaliation, etc.

(*Id.* ¶ 119, Ex. G.2.) CAIR alleges that this statement is defamatory because it implies that CAIR is funded by foreign governments and terrorist organizations, and "CAIR does not accept funding from terrorist organizations." (*Id.* ¶ 120.) Not only does that post not say what CAIR alleges it says in that there is no mention of foreign governments or terrorist organizations; even if it did, it would be in the broader context of a statement of Saroya's opinion regarding where CAIR should place its priorities.

CAIR's failure to specifically identify actionable defamatory statements in the context of broader statements of Saroya's subjective beliefs is not a problem that is limited to the above examples. It applies across the board to CAIR's Complaint. Because CAIR fails to adequately plead exactly what it is about Saroya's inherently subjective, opinion-based statements that can give rise to a viable claim for defamation, the Court should dismiss its claims to the extent that they are based on any of the statements alleged at Paragraphs 52 through 161 of CAIR's Complaint. *See Clancy*, 2019 WL 955113, at *10.

### C.    Saroya's Statements Regarding Her Legal Claims Are Privileged.

Finally, CAIR makes a number of allegations regarding Saroya's statements that she is entitled to unpaid wages, bonuses and reimbursements. (*See* Compl. ¶¶ 72-77, 79-83, 90-94, 102-08, 134.) These statements relate to Saroya's claim for unpaid wages, one which she filed with the Washington D.C. Department of Employment Services on October

31, 2020.  (*Id.* ¶ 75.)  In that they relate to a claim of entitlement to wages, they are not only statements of a subjective belief of entitlement, but they are privileged statements that cannot serve as a basis for a defamation claim.  *See Svendsen v. G4S Secure Solutions (USA) Inc.*, No. 16-0583, 20108 WL 4374008, at *9 (D. Minn. Sept. 13, 2018) (discussing an absolute privilege for statements that have reference, relation or connection to litigation); *Ray v. Hauff*, No. 08-922, 2010 WL 1390866, at *9 (D. Minn. Mar. 31, 2010) ("Statements made in the context of a judicial or quasijudicial proceeding are entitled to an absolute privilege.  This privilege may extend to statements published prior to a judicial proceeding, but the statements must have some relation to the judicial proceeding."); *Alzheimers Found. Of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 796 F. Supp. 2d 458, 471 (S.D.N.Y. 2011) ("It is common for parties to commercial litigation to release statements to the press and such statements are non-actionable statements of opinion as to the probable outcome of the litigation . . . . Similarly, a statement condemning an opponent's legal claims as 'baseless' is mere opinion and not defamatory.").  The allegations of unpaid wages contained in Paragraphs 72-77, 79-83, 90-94, 102-08 and 134 of the Complaint are not actionable.

## IV.    CAIR'S PURPORTED TORTIOUS INTERFERENCE CLAIM (COUNT III) IS NOT LEGALLY VIABLE.

### A.    The Court Should Dismiss Defendant's Tortious Interference Claim As Redundant.

Minnesota courts have recognized that "[t]ortious interference claims that are duplicative of a claim for defamation are properly dismissed."  *European Roasterie, Inc. v. Dale*, No. 10-53, 2010 WL 1782239, at *5 (D. Minn. May 4, 2010); *Tuan J. Pham v.*

*Thang Dinh Le*, No. A06-1127, 2007 WL 2363853, at *7-8 (Minn. Ct. App. Aug. 21, 2007) ("Appellants argue that Capital Market's claim fails as a matter of law on the ground that it is duplicative of respondent's defamation claim.  We agree."); *see also Dr. R.C. Samanta Roy Inst. of Sci. & Tech. v. The Star Tribune Co.*, No. 05-735, 2005 WL 1661514, at *5 (D. Minn. July 15, 2005) ("Minnesota law suggests that when a defamation claim cannot stand, a claim for tortious interference with business expectancy must also fail.").  As stated in Section II.B, CAIR's tortious interference claim is premised entirely on its allegations that Saroya made defamatory statements to donors, religious leaders and other partners.  Inasmuch, the tortious interference claim is duplicative, and dismissal of Count III at this early stage is appropriate in the interests of judicial economy and the preservation of the parties' resources.

> **B.    CAIR Has Failed To Plead A Tortious Interference Claim On Which Relief Can Be Granted.**

CAIR has also failed to state a claim for tortious interference on which relief can be granted.  As discussed in Section I, the standard applicable to Rule 12(c) motions for judgment on the pleadings is the same as the standard applicable to Rule 12(b)(6) motions to dismiss.  *Satanic Temple*, 475 F. Supp. 3d at 957.  To survive a motion to dismiss, a complaint must contain "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, a complaint must allege facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.  A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do . . . ." *Id.*  "Nor does a complaint suffice if it

tenders 'naked assertion[s]' devoid of any 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Here, CAIR has utterly failed to plead a plausible claim for tortious interference with business relations.

Two essential elements of a tortious interference with business relations claim are causation and damages. *See Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 219 (Minn. 2014). It is not enough for a plaintiff to plead generally that relations have been lost. *Id.* at 221-22 ("a plaintiff's projection of future business with unidentified customers, without more, is insufficient as a matter of law."). Rather, a plaintiff must plead facts specifically identifying the third party/third parties that the defendant induced or otherwise caused not to enter into a relationship. *See id.* (reversing judgment for a plaintiff on tortious interference with prospective economic advantage claim where the plaintiff did not identify specific third parties with which it had a reasonable expectation of a future economic relationship and did not prove damages); *Dr. R.C. Samanta Roy Inst. of Sci. & Tech*., 2005 WL 1661514, at *5 (dismissing claim for tortious interference where the plaintiff generally alleged an interference with unspecified customers).

For example, in *Hot Stuff Foods, LLC v. Dornbach*, 726 F. Supp. 2d 1038 (D. Minn. 2010), the plaintiff alleged that the defendant former employee was soliciting one of the plaintiff's customers, and that the defendant's new brokerage business threatened future relationships with prospective clients. *Id.* at 1043. The plaintiff stopped short, however, of identifying "any prospective customer that Dornbach induced or otherwise caused not to enter into a contractual relationship with Hot Stuff, nor pleaded facts indicating that Hot

Stuff has been damaged by Dornbach's actions." *Id.* at 1044. The Court thus concluded that the plaintiff, unable to plausibly plead causation and damages, failed to state a tortious interference claim on which relief could be granted. *Id.*

Here, CAIR's Complaint contains allegations of particular individuals and groups to whom defamatory communications were made. Like the plaintiff in *Hot Stuff Foods*, however, it fails to identify a single lost relationship. (*See*, *generally*, Compl.) CAIR does not allege that any of the purported donors, religious leaders or partners with whom Saroya communicated actually ceased their relationships with CAIR. (*See id.*) Instead, CAIR perfunctorily alleges, "As a result of Saroya's statements, CAIR has lost multiple partners, donors, and religious leaders." (*Id.* ¶ 162.)

Such a generalized allegation is insufficient to plausibly plead a claim for tortious interference with business expectancy under Minnesota law. *See Int'l Travel Arrangers v. NWA, Inc.*, 991 F.2d 1389, 1405 (D. Minn. 1993) (holding that "the mere general loss of possible unspecified customers does not establish the tort . . . under Minnesota law" and affirming refusal to submit to the jury a claim based on allegations of "lost prospective economic relations with air travel customers"). Since CAIR has failed to plead that any particular donor, religious leader or partner ceased doing business with CAIR as a result of Saroya's statements, it has failed to adequately plead the causation element required of a viable tortious interference claim. *See Superior Edge, Inc. v. Monsanto Co.*, 964 F. Supp. 2d 1017, 1044 (D. Minn. 2013) (dismissing tortious interference claim where "SEI . . . identified no prospective business relationship with Spangenberg Group that it was unable to pursue or lost out on because Monsanto entered into a separate agreement with the

Group"); *Matson Logistics, LLC v. Smiens*, No. 12-400, 2012 WL 2005607, at *11 (D. Minn. June 5, 2012) ("because no facts have been alleged showing that the acts of Lynch or Granite were the direct cause of Matson's and Global's failure to extend the contract term, Matson's claim for tortious interference with prospective advantage is dismissed"). And, of course, if CAIR cannot identify any lost business relationship, it likewise cannot plausibly allege that it has suffered damages as a result of the purported interference. *See Skukh v. Seagate Tech., LLC*, No. 10-404, 2011 WL 1258510, at *12 (D. Minn. Mar. 30, 2011) (dismissing tortious interference claim where, among other things, the complaint failed to allege "why it was probable that [the plaintiff] would have realized [an] expectancy, or specific damages resulting from [the defendant's] actions"). The Court should dismiss CAIR's tortious interference count for failure to state a claim.

## V. THE COURT SHOULD DISMISS CAIR'S PURPORTED CLAIM FOR INJUNCTIVE RELIEF (COUNT V).

Count V for injunctive relief is not legally viable either. (*See* Compl. ¶¶ 200-03.) As a preliminary matter, "[a]n injunction is a remedy, not a cause of action." *Neuman v. JP Morgan Chase Bank, N.A.*, 81 F. Supp. 3d 735, 746 (D. Minn. 2014); *Jensen v. Chateau Cmtys., Inc.*, No. A03-1320, 2004 WL 885777, at *2 (Minn. Ct. App. Apr. 27, 2004) (rejecting the notion that an "injunction is somehow the equivalent of a cause of action."). The Court should dismiss Count V on that basis alone.

More fundamentally, though, the injunction requested is so broad as to be violative of Saroya's First Amendment right to free speech. In particular, CAIR is requesting that Saroya be ordered to:

      a.       remove all defamatory social media publications made by Saroya under her given name or any of her pseudonyms;

      b.       issue a retraction for all defamatory publications; [and]

      c.       cease and desist from any further defamation of CAIR in any form on any platform . . . .

(Compl. ¶ 203.)  By its requested injunction, then, CAIR seeks not only censorship of past comments, but to prohibit Saroya from making future statements.  The injunction sought is a prior restraint and does not pass constitutional muster.

The fundamental right to free speech is enshrined in the First Amendment to the United States Constitution.  U.S. Const. amend. I ("Congress shall make no law . . . abridging the freedom of speech").  "As a general matter, the First Amendment forbids the government, including the Judicial Branch, 'from dictating what we see or read or speak or hear.'" *Sindi v. El-Moslimany*, 896 F.3d 1, 30 (1st Cir. 2018) (citing *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245 (2002)).

Injunctions that prohibit communications that have not yet occurred are a "paradigmatic example of a prior restraint . . . ."  *Id.* at 31 (citing *Alexander v. United States*, 509 U.S. 544, 550 (1993)).  "[P]rior restraints on speech and publication are the most serious and least tolerable infringement on First Amendment rights."  *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).  "The special vice of a prior restraint is that communication will be suppressed, either directly or by inducing excessive caution in the speaker, before an adequate determination that it is unprotected by the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390 (1973).  There is a strong presumption that prior restraints are unconstitutional.  *Sindi*, 896

F.3d at 31 (citing *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971)).  They are only permissible when they further "the essential needs of the public order" and "when those needs cannot be achieved through less restrictive means."  *Id.* at 32 (quoting *Carroll v. President of Comm'rs of Princess Anne*, 393 U.S. 175, 183 (1986)).  "And even when a prior restraint may theoretically be permissible, the decree that embodies it must be precisely tailored both to meet the exigencies of the particular case and to avoid censoring protected speech." *Id.*

The First Circuit Court of Appeal's *Sindi* decision is illustrative of the application of these principles to an injunction purporting to prohibit future defamation.  In *Sindi*, the First Circuit concluded that even a prohibition on statements previously found to be defamatory at trial constituted an overbroad prior restraint in violation of the First Amendment.  *Id.* at 30-35.  In that case, the District Court issued a permanent injunction after trial that enjoined the defendants/appellants from "repeating—orally, in writing, through direct electronic communications, or by directing others to websites or blogs reprinting" six particular statements.  *Id.* at 27.  Rejecting the plaintiff/appellee's argument that the injunction comported with the First Amendment because the six statements were already used to defame her and no longer constituted free speech, the First Circuit concluded that the injunction punished future conduct that may be constitutionally protected and thus failed the First Amendment's requirement that it be tailored as precisely as possible.  *Id.* at 32-34.

The Court held that an injunction that prevents in perpetuity the utterance of words and phrases after a defamation trial is impermissible in light of the contextual nature of the

tort. *Id.* at 33. "Words that were false and spoken with actual malice on one occasion might be true on a different occasion or might be spoken without actual malice." *Id.* at 33. The Court concluded that since the contextual permutations are endless, a permanent injunction that prohibited the reutterance of the six statements could not be narrowly tailored to fit the precise circumstances of the case. *Id.*

The relief that CAIR seeks here is far beyond the relief that the First Circuit found impermissible in *Sindi* and anything that could even arguably be deemed constitutionally permissible. CAIR seeks a permanent injunction against any "defamation of CAIR in any form on any platform . . . ." (Compl. ¶ 203.) The requested relief is not even limited to statements that have already been adjudicated as defamatory. *See McCarthy v. Fuller*, 810 F.3d 456, 464 (7th Cir. 2015) (Sykes, J., concurring) (noting that even cases that recognize the possibility for narrowly tailored injunctive relief as a remedy for defamation do so "as long as the injunction prohibits *only* the repetition of the specific statements found at trial to be false and defamatory.") (emphasis in original); *Royal Oaks Holding Co. v. Ready*, No. C4-02-267, 2002 WL 31302015, at *4 (Minn. Ct. App. Oct. 7, 2002) (holding that a district court order prohibiting the publication of defamatory materials before they have been judicially determined to be outside the scope of the First Amendment's protection constituted "an unconstitutional prior restraint on free speech"). CAIR effectively seeks to muzzle Saroya, seeking to chill her willingness and ability to discuss her experiences at CAIR simply because it does not want the exposure, and trampling her First Amendment protections in the process. Even if an injunction were a constitutionally permissible

remedy for defamation,[4] the breadth of the prior restraint that CAIR seeks is certainly violative of the First Amendment.  For all of the reasons discussed herein, the Court should dismiss Count V of CAIR's Complaint.

## CONCLUSION

For the forgoing reasons, Saroya respectfully request that the Court grant her Motion for Partial Judgment on the Pleadings, dismissing Counts I, II, III and V of the Complaint in their entirety.

Dated: October 6, 2021                    **SAUL EWING ARNSTEIN & LEHR, LLP**

                                          By   *s/ Steven C. Kerbaugh*
                                              Alain M. Baudry (MN #186685)
                                              Steven C. Kerbaugh (MN #0390429)
                                              33 South Sixth Street, Suite 4750
                                              Minneapolis, MN 55402
                                              Telephone: (612) 225-2946
                                              Facsimile: (612) 677-3844
                                              Email:  alain.baudry@saul.com
                                              Email:  steven.kerbaugh@saul.com

                                              Jeffrey S. Robbins (Admitted *Pro Hac Vice*)
                                              Joseph D. Lipchitz (Admitted *Pro Hac Vice*)
                                              SAUL EWING ARNSTEIN & LEHR, LLP
                                              131 Dartmouth Street, Suite 501
                                              Boston, MA 02116
                                              Telephone: (617) 723-3300
                                              Facsimile: (617) 723-4151
                                              Email:  jeffrey.robbins@saul.com
                                              Email:  joseph.lipchitz@saul.com

                                              *Attorneys for Defendant Lori Saroya*

---

[4] Some courts have suggested "that such a remedy is per se unconstitutional." *Sindi*, 896 F.3d at 30 (citing *McCarthy*, 810 F.3d at 464-66 (Sykes, J., concurring); *Kinney v. Barnes*, 443 S.W.3d 87, 89, 94 (Tex. 2014)).