# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION



IN RE: COUNCIL ON AMERICAN      Misc. Docket No:
ISLAMIC RELATIONS, MICHIGAN,

           Subpoenaed Non-Party.      JUDGE:

                                    MAGISTRATE:

## NON-PARTY CAIR-MI'S MOTION TO
## QUASH DEFENDANT'S SUBPOENA DUCES TECUM

Non-party Council on American Islamic Relation, Michigan ("CAIR-MI"), by and through undersigned counsel, hereby moves, pursuant to Fed.R.Civ.P. 45(d)(3)(A);(B), to quash the subpoena duces tecum served by Asma Lori Haidri Saroya ("Saroya"), the defendant in the underlying action, pending in the United States District Court for Minnesota, *CAIR Foundation, Inc., d/b/a/ Council on American Islamic Relations & CAIR v. Asma Lori Haidri Saroya a.k.a. Lori Saroya, Asma Saroya, Lori Haidri, Lori Haidri-Saroya, & LH* Case No. 21-cv-01267 (SRN/TNL), because compliance would subject CAIR-MI to an undue burden, intrude upon privileged and confidential information, expose CAIR0MI and its supporters to harassment, and inflict a scope of discovery grossly disproportionate with Sorya's needs. A true and accurate copy of the subpoena is attached hereto as Exhibit A, while a description of the burden, privileges, confidentiality, harassment and proportionality is provided in both the Momorandum of Support of this motion

1

and the Declaration attached as Exhibit B from the CAIR-MI board President and

Legal Advocacy Chair and its attachments.

## MEMORANDUM IN SUPPORT OF THE NON-PARTY CAIR-MI'S MOTION TO QUASH DEFENDANT'S SUBPOENA *DUCES TECUM*

I. **Background**

The underlying litigation centers on repeated public statements, typically on

social media, by Saroya denouncing CAIR for a multitude of sins, ranging from

owing her money, through seeking to intimidate her, to tolerating sexism and racism.

Even though CAIR commenced this litigation, Soraya has now served a subpoena

duces tecum on non-party CAIR-MI.[1]

The place designated for CAIR-MI to produce voluminous documentation is

Recon Management Group, LLC located at 30400 Telegraph Road, Suite 472,

Bingham Farms, MI 40825. Under Fed.R.Civ.P. 45, this Court is the court for the

district where compliance is required and the forum for resolving a motion to quash

a subpoena ministerially issued at the request of Saroya's attorneys by the Minnesota

court in the underlying action.

---

[1] The subpoena duces tecum was improperly served to CAIR-MI by placing it under the door of the Executive Director's office at some unknown time most likely the weekend of October 1-3 and was found on or about October 7th. The Subpoena was eventually served properly to the Executive Director after the close of business on November 11th when he was called back to the office after leaving for the day by a staff member solely for the purpose of accepting service of the subpoena in question.

Saroya headed CAIR-Minnesota from 2007 through 2014 and then served as CAIR's National Chapter Development Director and Board Member during the period from 2016 to 2018. The underlying diversity litigation was commenced by CAIR and alleges four counts: (1) defamation; (2) defamation per se; (3) tortious interference with business relationships; and (4) misappropriation of confidential information.

## II.  Non-party Status of CAIR-MI

CAIR-MI is a separate legal entity from CAIR. CAIR-MI is registered, and in good standing, as a nonprofit charitable organization with the Michigan State Department of Licensing and Regulatory Affairs ("LARA").   See Exhibit C and Ahad Dec. ¶ 6.

In contrast, CAIR is a District of Columbia non-profit corporation that has registered and trademarked the logo and name CAIR with the United States Patent and Trademark office. See Ahmad  Dec ¶ 7

CAIR-MI is a licensee of CAIR operating under an affiliation agreement. Id at ¶ 8.  In the underlying action, Saroya has argued that on its website CAIR refers to its Chapters across the United States and has declared that CAIR is actively engaged with operating its chapters. As to CAIR-MI, its "employment practices, budgets, and finances have been controlled solely by CAIR-MI with no interference from CAIR," and it is controlled and managed solely by local board of directors of

3

CAIR-MI." Ahamd Dec ¶¶ 9-11. Saroya has not suggested, moreover, that the chapters control CAIR.

First, the licensing agreement and registration with LARA- CAIR is not so registered - establishes that CAIR-MI is a separate legal entity.[2] Second, in his Declaration, CAIR-MI's board President expressly denies that CAIR governs or interferes with CAIR-MI's operations. Ahmad Dec. ¶¶ 9-11. Third, the Complaint in the underlying action reproduces and incorporates Saroya's social media and other communications, yet, apart from the undeveloped facts of her sending any communication to CAIR-MI, none of them refer to CAIR-MI or its employees. Fourth, CAIR-MI had nothing to do with drafting or bringing the underlying action. Id.¶ 23-24. Fifth, CAIR-MI has not alleged that Saroya engaged in misconduct when she was employed by CAIR. Id. ¶22.[3] Sixth, CAIR-MI has no claim for damages from Saroya's social media postings or other statements. Id. At ¶25.[4]

## III.  Saroya's Subpoena Duces Tecum Is Remarkably Overbroad, Intrusive, and Unduly Burdensome. on CAIR-MI

---

[2] Look up MI Stature req registration of non profit corps here.

[3] A comprehensive search must apparently still be made to comply with Request No . 4: "All documents referring to or relating to or reflecting or constituting evidence that Saroya has ever engaged in 'harassment' or 'abusive' conduct of any kind." Notably, Saroya was never an employee at CAIR-MI, and Saroya's argument that CAIR reaches into the internal operations of "Chapters" does not stretch to insinuate that "Chapters" control CAIR.

[4] A comprehensive search must apparently still be made to comply with Request No.5: "All documents referring or relating to or reflecting or constituting evidence that statements by Saroya have adversely affected Your [defined as CAIR-MI] or CAIR's fundraising revenue."

Saroya has made 27 substantive requests for production, prefaced by instructions and definitions, in her subpoena duces tecum. The definitions expand the breadth at every turn, a dynamic captured by the preface -- "Notwithstanding any definition below, each word, term, or phrase used in the Request is intended to have the broadest possible meaning." - and confirmed by the last definition: "If the requested documents are maintained in a file, the file folder is included in the request for production of those documents." The inherently broad terms "concerning"; "relate"; and "relating to" are further defined to be boundaryless.

For example, the first Request sought "[a]ll documents referring or relating to Saroya, or in any way concerning Saroya, by whatever name"; the second for "[a]11 documents referring to or relating to or reflecting or constituting communications between Saroya or any of Your officers, employees or directors, past or present"; and the third the same except without the "between" phrase. Only one Request had a specific time period; the default time period is provided by Instruction No. 6, "Unless otherwise stated, these Requests are for the period from 2011 to the present." Thus, ten years' worth of documents have been subpoenaed. CAIR-MI is not a corporation staffed with informational technology experts. Most of its documents are not even "stored in a manner susceptible to computer search and retrieval nor otherwise indexed in any meaningful way or inventoried; consequently, compliance with Defendant's subpoena duces tecum would require searching by hand, document

by document." Ahmad Dec.¶ 14. CAIR-MI's board President estimates that compliance would necessitate hiring "multiple employees or contractors to go through boxes and cabinets of documents" Id. ¶14-18. CAIR-MI has three (3) full-time and one (1) part-time employee "none of whom has a full-time information technology or computer operator designation or duties." Id.

Additionally, CAIR-MI does not utilize, own, or operate under a local networking system, nor does CAIR-MI own, operate or utilize a central document or data storage system. Each individual employee, officer, agent of CAIR-MI both past and present have created, stored or otherwise saved documents on their individual computers many of which were recycled in August of 2020 when CAIR-MI moved offices from Farmington Hills, Michigan to its current location in Canton, Michigan. Id at ¶19.

CAIR has access to all work emails used by CAIR-MI staff as the emails are on a server run, managed, and controlled by CAIR. Additionally, CAIR-MI staff are also on various list serves which are run, controlled, and managed by CAIR and these list serves have potentially thousands of emails which mention Defendant. It would be very burdensome and time-consuming for non-party CAIR-MI's staff to find relevant emails especially when considering the fact that the party to this lawsuit, CAIR, is the host and has access to all these emails. Id at ¶¶ 20-21.

Request No. 6 seeks "[a]ll documents referring to or reflecting donations, gifts, or grants to You." As its full name indicates, the mission of CAIR-MI is to: "Enhance the understanding of Islam, encourage dialogue, protect civil liberties, empower American Muslims and build coalitions that promote justice and mutual understanding through education, mediation, media and the law." Ahmad Dec. ¶5

CAIR-MI has endured attacks for protecting the right of Muslims in Michigan. The board President "has observed the effects of political polarization in Michigan, particularly characterizing Muslim- Americans as enemies of the United States, terrorists, and/or untrustworthy." Id. at 26. He described the specific mistreatment CAIR-MI has suffered: "CAIR-MI's name has been mentioned by elected officials in Michigan as has the name of our executive director, Dawud Walid, in an attempt to characterize CAIR-MI as untrustworthy and supporting terrorism as enemies of the United States. CAIR-MI has received harassing and threatening phone calls and letters from the public for over twenty years and in 2017 was warned by the Farmington Hills Police Department that the CAIR-MI office was being targeted for a possibly violent attack prompting police officers to visit the office to deliver the warning and to step up patrols in and around the vicinity of its office for period of time." Id at ¶¶ 27-28.

"CAIR-MI maintains the anonymity of its contributors to the maximum extent permitted by law, largely because of the political polarization and the way it chills

contributors." Id. at 29. Production would smash that anonymity, be likely to expose donators to retaliation, and be viewed by putative donors as posing such a risk. This past term, the United States Supreme Court reaffirmed First Amendment protection in such situations.

California had required that charitable organizations "disclose to the state Attorney General's Office the identities of their major donors." *Americans for Prosperity Found. v. Bonta,* 141 S. Ct. 2373, 2379 (2021). Organizations "alleged that disclosure of their Schedule Bs would make their donors less likely to contribute and would subject them to the risk of reprisals." Id. at 2380. Quoting from *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 462 (1958), the Court, 141 S.Ct. at 2382, stated: "We have also noted that '[i]t is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action.'"

Recognizing that "*NAACP v. Alabama* involved this chilling effect in its starkest form," the Court proceeded to declare California's requirement facially unconstitutional based on the type of threats and harassment CAIR-MI has received. Id. at 2382, 2388 (recognizing that Googling and similar searches can lead to residential and other sensitive information). The critical point was the recognition in *NAACP v. Alabama,* 357 U.S. at 462, of "the vital relationship between freedom to associate and privacy in one's associations." Indeed, near the ending of its opinion,

the Court, quoting from *NAACP v. Button*, 371 U.S. 415,433 (1963), stated: "The risk of a chilling effect on association is enough, '[b]ecause First Amendment freedoms need breathing space to survive.'"

The Court seemingly anticipated the type of response Saroya will make by her invoking the protective order in the underlying case. Quoting from *Shelton v. Tucker*, 364 U.S. 479, 386 (1960), the Court, 141 S.Ct. at 2388, explained: "Our cases have said that disclosure requirements can chill association '[e]ven if there [is] no disclosure to the general public.'" The Court emphasized that "[e]xacting scrutiny is triggered by 'state action which may have the effect of curtailing the freedom to associate,' and by the 'possible deterrent effect' of disclosure." Id. (citing with emphasis added *NAACP v. Alabama*, 357 U.S., at 46 1).

To bring home its holding, *Banta*, 141 S.Ct. at 2388, appreciated "[t]he gravity of the privacy concerns" by citing amici curiae briefs, including "from the Council on American-Islamic Relations [CAIR]." The same conclusion the Court then reached applies to Saroya's subpoena duces tecum: "The deterrent effect feared by these organizations is real and pervasive, even if their concerns are not shared by every single charity operating or raising funds in California." *Id.* Furthermore, it must be emphasized again that non-party CAIR-MI has no claim for damages or loss of donors or organization detriment from Saroya's social media postings or other statements. Ahmad Dec. ¶ 25.

Saroya's Requests Nos. 7-12, 24 seek "[a]ll documents referring or relating to or reflecting or constituting" all claims or allegations made against CAIR-MI, including those by present or former employees and confidentiality or non-disclosure agreements between CAIR-MI and those present or former employees." Production would involve "employee personnel files, records or references to discipline, and confidential, private information." Ahmad Decl. ¶34.

Requests Nos. 13-16, 21-23 seek "[a]ll documents referring or relating to" named individuals, yet, with one exception, none was "employed by CAIR-MI or involved in any non- trivial way with the activities of CAIR-MI." Ahmad Decl. ¶ 36.

Request No. 17 sought "[a]ll documents referring or relating to or constituting consulting reports, internal or external investigative reports, or other reviews relating in any way to Your management or Your handling of claims or grievances." Even apart from any self-critical analysis privilege, Saroya's request has barely arguable relevance while seeking ten years' worth of documents about CAIR-MI's management and claims or grievances. To reiterate, CAIR has sued Saroya, and CAIR-MI is a licensee, not a co-conspirator. The Complaint against Saroya by CAIR which details Saroya's many denouncements of CAIR in her social media posts and statements, does not consist of a single post or statement targeting CAIR-MI.

Request No. 18 demanded production of "[a]ll documents referring or relating to or constituting the testimony, whether by affidavit, deposition or otherwise of any

of Your officers or employees in any judicial or administrative proceeding." Even apart from any protective orders that sought to limit use of such testimony to the specific proceeding, Saroya's request is virtually a dictionary definition of a fishing expedition. Proceedings ranging from unemployment compensation and discrimination or retaliation claims through tax, landlord-tenant, and premises liability to every other kind for the past ten years are sought. As before, Saroya has not posted on social media or made a statement alleging CAIR-MI mistreated her during her employment with CAIR.

Requests Nos. 19 and 20 seek "[a]11 documents referring or relating to regular meetings or conference calls between You, or any of Your officers or employees, and CAIR's Executive Director, CAIR chapter officials, or CAIR senior staff' and, in the one Request with a 2018-19 timeframe, rather than for ten years, "[a]11 documents referring or relating to or reflecting the work of any committee" established "to evaluate CAIR's finances and related matters." The scope is breathtaking: conference calls with CAIR senior staff occur frequently, cover a wide range of topics, and are seldom documented, though references or documents relating to them are natural. Whatever relevance Saroya claims is eclipsed by the undue burden, particularly in light of the largely futile searches for any variation of her name.

Request No. 24 seeks "[a]ll documents referring or relating to or reflecting or constituting communications between You, or any of your officers or employees, and any officer, director or employee of any CAIR chapter or affiliate regarding allegations of religious, gender or sexual discrimination, sexual harassment or assault or retaliation." The breadth ignores the duty of a party to show that she and her proposed comparators were similar in all relevant respects, and that he and his proposed comparators engaged in acts of comparable seriousness." *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012). The disproportion is obvious: Saroya was never employed by CAIR-MI, let alone supervised by CAIR-MI managers.

Requests Nos. 25 and 26 seeks "[a]ll documents referring or relating to or reflecting or constituting tax filings of any kind by or on behalf of You, including all schedules and amendments" and those on "compensation paid to Your officers or directors." CAIR-MI treats its tax filings, apart from the 990 filing with the IRS that is publicly available, as confidential and trade secrets. Ahmad Dec. ¶ 38. Federal courts generally resist discovery of tax returns. See, e.g., *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992); *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225,229 (9th Cir. 1975).

Request No. 27 seeks "[a]ll documents referring or relating to or reflecting or constituting communications relating to the practice of law or the purported practice

of law, or the provision of legal services or the purported provision of legal services, by Morris Days, Roman Iqbal, Danette Zachary-Mask and Lena Masri." CAIR-MI has never had any involvement with Days and barely any involvement with Zachary-Mask and Iqbal, and Masri was a firmer employee of CAIR-MI, she is currently in the role of Legal Director for CAIR. Ahmad Dec. ¶ 41-43 (Days and Zachary-Mask were never employed or supervised by CAIR-MI and even minor interactions with Zachary-Mask did not involve Saroya). Every single case CAIR-MI has brought or defended and most of its administrative docket for the past ten years are encompassed by Request No. 27 and the entire file is sought, regardless of attorney-client communication or work product, for each. Yet, "[n]one of CAIR-MI's attorneys practice of law or provision of legal services has involved in any non-trivial way Defendant Saroya," Id. at 47, and "[c]omplying with Request No. 27 would require production of attorney-client communications and/or work product." Id. at 48.

## IV. Rule 45 Empowers this Court to both Quash the Subpoena Duces Tecum and Award CAIR-MI Its Attorney's Fees and Costs.

Fed.R.Civ.P. 45(d)(3)(A) requires a subpoena to be quashed by "the court for the district where compliance is required" when it either "(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed.R.Civ.P. 45(d)(3)(B)(i) permits a subpoena to be quashed if production results in "disclosing a trade secret or other confidential

research, development, or commercial information." The undue burden analysis is guided by the proportionality standard under Fed.R.Civ.P. 26, though "a subpoena issued against a nonparty" involves a "more demanding variant of the proportionality analysis." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir.), cert. denied, 140 S.Ct. 672 (2019). "When discovery is sought from nonparties, however, its scope must be limited even more." Id. Such third parties "should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Id.*

In the balancing, "courts should consider not just the relevance of information sought, but the requesting party's need for it. The information sought must likely (not just theoretically) have marginal benefit in litigating important issues.... Courts should also consider what information is available to the requesting party from other sources. To that end, the requesting party should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation[.]" *Id.* at 189-90 (citations and footnotes omitted). Beyond "the dollars-and-cents costs associated with a large and demanding document production" are "cognizable burdens" such as "invading privacy or confidentiality interests." *Id.* · Personnel documents are especially sensitive in this sense. *Onwuka v. Federal Express Corp.*, 178 F.R.D. 508, 516-17 (D. Minn. 1997) ("the personnel files of an entire class of employees should not be

14

produced, even in an employment discrimination proceeding, absent a compelling showing of relevance").

The bottom line is that, "even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 {8th Cir. 1999) (quotation omitted). Thus, "subpoenas issued under Rule 45 are subject to the same "constraints that apply to all of the other methods of formal discovery."' *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 236-37 {D. Minn. 2013) (quoting *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.,* 177 F.R.D. 443, 443 (D.Minn.1997)). Accord *Cook v. Howard*, 484 Fed.Appx. 805, 812 & n.7 (4th Cir. 2012) (per curiam) {"This ground encompasses situations where the subpoena seeks information irrelevant to the case or that would require a non-party to incur excessive expenditure of time or money[.]").

In the Sixth Circuit, undue burden imposed by discovery is assessed on a case-by-case basis, "considering such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *In re: Modern Plastics Corporation,* 890 F.3d 244, 251 (6th Cir. 2018) {internal quotation omitted). While discovery is liberal, the "desire to allow broad discovery

is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991). Overbroad requests that are unduly burdensome to produce are improper. *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) ("Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to "go fishing" and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'") (citation omitted).

Rule 45(d)(1) imposes a duty on Saroya and her attorneys: they "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Subpoenaing ten years' worth of documents is unreasonable given CAIR-MI's noninvolvement in the underlying litigation, its records maintenance, and its small staff. See, e.g., *Dakota Energy Coop., Inc. v. E. River Elec. Power Coop., Inc.*, No. 4:20-CV-04192-LLP, 2021 WL 3862131, at *4 (D.S.D. Aug. 30, 2021) ("[T]he court notes that the discovery requested would cover, at most, a matter of a few months. Dakota Energy is not asking for years' worth of documents as to communications between third parties and East River and Basin."). The remarkable breadth of the requests is also unreasonable: "Broad, permissible discovery does not include requests for 'all documents' that 'relate in any way' to a complaint. See, e.g., *Doe v. Nebraska*, 788 F. Supp. 2d 975, 982 (D. Neb. 2011) (denying motion to

compel answers to interrogatories that effectively sought identification of 'all documents related in any way to this case' as 'a fishing expedition')." *JMIR Marquette Hotel LLC v. Cty. of Hennepin*, No. 27-CV-19-5739, 2021 WL 1288720, at *7 (Minn. Tax Apr. 2, 2021).

Courts regularly strike such requests. See, e.g., *WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1038 (8th Cir. 2011)(upholding the district court's determination that a request seeking all donations during a lengthy period was overbroad); *Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 50 (D.N.J. 1985). As explained in *Doe v. Nebraska*, 788 F. Supp. 2d 975, 982-83 (D. Neb. 2011), asking for "all" documents "that relate in any way" to allegations is "akin to asking the defendants to identify 'all documents related in any way to this case.'" Saroya's requests are not quite that broad, but they are facially excessive in the same way and the same conclusion - "The unfettered nature of these requests appears to be a fishing expedition." *Id.* -applies. The blatant intrusion on privileged or confidential areas is similarly indefensible.

Rule 45(d)(l) mandates awarding fees and expenses: "The court for the district where compliance is required must enforce this duty [of talcing reasonable steps] and impose an appropriate sanction- which may include lost earnings and reasonable attorney's fees - on a party or attorney who fails to comply." CAIR-MI is by all accounts unrelated to the underlying dispute between CAIR and Saroya. As a

licensee, CAIR-MI is a non-party, and, as a factual matter, its involvement in any way, shape, or form with Saroya has been less then peripheral. Her silence about CAIR-MI in all of her noisy denunciations of CAIR is telling. No sufficient justification exists for pulling CAIR-MI into the underlying dispute, inflicting an undue burden on it, and intruding on privileged or confidential information.

## V. Conclusion

For the foregoing reasons, Saroya's subpoena duces tecum should be quashed and the fees and costs it incurred awarded.

Respectfully Submitted,

/s/Amy V. Doukoure
Amy V. Doukoure (P80461)
CAIR-MI
1905 S. Haggerty Road, Suite 5
Canton, MI 48188
(248) 559-2247
adoukoure@cair.com

DATED: November 26, 2021

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was sent to the Clerk for filing this 26th day of November, 2021, via UPS and was served upon the following via email:

Alain Baudry (alain.baudry@saul.com)
Steven Kerbaugh (steven.kerbaugh@saul.com)
Jeffrey Robbbins (jeffrey.robbins@saul.com)
Joseph Lipchitz (joseph.lipchitz@saul.com)
Cindy B. Morgan (cmorgan@rubinfortunato.com)
Michael Fortunato (mfortunato@rubinfortunato.com)
Carl E. Chrisensen (carl@clawoffice.com)

# EXHIBIT A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### District of Minnesota

| | | |
|---|---|---|
| CAIR FOUNDATION, INC , d/b/a COUNCIL ON AMERICAN-ISLAMIC RELATIONS, & CAIR, | ) | |
| *Plaintiff* | ) | Civil Action No. 0:21-CV-01267 |
| **v.** | ) | |
| ASMA LORI HAIDRI SAROYA a.k.a LORI SAROYA, ASMA SAROYA, LORI HAIDRI, LORI HAIDRI-SAROYA, & LH. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
                            CAIR MICHIGAN, INC.
                    c/o Registered Agent Dawud Walid
                1905 Haggerty Road, Suite 5   Canton MI, 48188
                        *(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attached Ex. A (Subpoena Rider)

| Place:   Recon Management Group LLC | Date and Time: |
|---|---|
| 30400 Telegraph Road, Suite 472 Bingham Farms, MI 48025 | October 15, 2021 at 10:00 a.m. |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   09/23/2021

                    *CLERK OF COURT*

                                        OR      *Steven C. Kerbaugh*
_____                    _____
   *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Defendant, Asma Lori Haidri Saroya a.k.a Lori Saroya, Asma Saroya, Lori Haidri, et al., who issues or requests this subpoena, are: Saul Ewing Arnstein & Lehr, LLP c/o Steven C. Kerbaugh, 33 South Sixth Street, Suite 4750, Minneapolis MN, 55402 (612) 225-2792   Steven.Kerbaugh@saul.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 0:21-CV-01267

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____       _____
                                          *Server's signature*

                            _____
                                          *Printed name and title*

                            _____
                                          *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CAIR FOUNDATION, INC., d/b/a
COUNCIL ON AMERICAN-ISLAMIC
RELATIONS, & CAIR,

              Plaintiff,

v.

ASMA LORI HAIDRI SAROYA a.k.a.
LORI SAROYA, ASMA SAROYA,
LORI HAIDRI, LORI HAIDRI-
SAROYA, & LH,

              Defendant.

Civil Action No.: 0:21-cv-01267

## SCHEDULE A

### INSTRUCTIONS

1.    If, in responding to the Requests, you encounter any ambiguities when construing a request or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

2.    You shall produce non-duplicative documents and shall organize the produced documents to correspond with the categories in the Request.

3.    Whenever you are asked to identify or produce a document in a Request that is deemed by you to be properly withheld from production for inspection or copying:

    a.    If you are withholding the document under claim of privilege (including, but not limited to, the work product doctrine), please identify the type of document, the general subject matter of the document, the date of the document, and such

other information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document, and where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other, in a manner that, without revealing the information claimed to be protected, will enable this party to assess the applicability of the privilege or protection claimed by you.

b.     If you are withholding the document for any reason other than an objection that it is beyond the scope of discovery or that a request is unduly burdensome, identify as to each document and, in addition to the information requested in Paragraph 3.a above, please state the reason for withholding the document.

4.     When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to the part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

5.     Whenever a request seeks the production of a document which has been destroyed, the response should state the date of destruction, the reason for destruction, the identity of each and every person who destroyed or discarded, or participated in, ordered, or suggested the destruction or discarding of, the document. In addition the response

should state whether the documents were destroyed as a result of a destruction policy, and if so, provide a description of such policy.

      6.     Unless otherwise stated, these Requests are for the period from 2011 to the present.

## DEFINITIONS

Notwithstanding any definition below, each word, term, or phrase used in the Requests is intended to have the broadest possible meaning. As used in the Requests, the following terms are to be interpreted in accordance with these definitions:

      a.     "Person" means any natural person or corporate or governmental entity.

      b.     The term "document" means any medium upon which data, information or intelligence can be recorded or retrieved, and translated, if necessary, through detection devices into reasonably useable form, and includes, without limitation, the original, drafts and each copy, in both paper and electronic form, regardless of origin and location, of any and all books, pamphlets, periodicals, letters, telefaxes, e-mail communications (including messages and all attachments thereto), text messages, chat communications, social medial posts and communications, memoranda (including any memorandum, note or report of a meeting or conversation), invoices, bills, contracts, loan applications, credit reports, loan documents, forms, receipts, financial statements, accounting entries, diaries, calendars, telexes, telegrams, cables, reports, records, studies, handwritten notes, drafts, working papers, charts, papers, prints, drawings, sketches, graphs, indices, lists, tapes, photographs, microfilms, data sheets or data processing cards, computer diskettes, CD-ROMs, removable computer media, data files, or any other written, recorded, transcribed, punched,

taped, filmed, or graphic matter, however produced or reproduced, which is in your possession, custody or control.

    c.    The term "communication" means the transmittal of information by any means, including but not limited to any oral or written utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, conferences, agreements, and other understandings between or among two or more persons.

    d.    The term "company" means any enterprise, corporation, corporate entity, partnership, association, limited liability company or other legal entity of any kind or nature.

    e.    The term "concerning" means relating to, referring to, describing, evidencing, comprising, setting forth, showing, supporting, disclosing, explaining, summarizing, memorializing or constituting, whether directly or indirectly.

    f.    The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all;" "any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompass both "and" and "or."

    g.    The term "including" means including but not limited to.

    h.    The terms "relate" and "relating to" mean constituting, comprising, containing, setting forth, showing, disclosing, describing, explaining, summarizing, concerning, or referring to, directly or indirectly.

i.     "You" and "Your" refers to CAIR MICHIGAN, INC., as well as its predecessors, parents, affiliates, subsidiaries, agents, officers, employees, directors, investigators, attorneys, representatives or any other persons acting or purporting to act on its behalf or acting under its control.

j.     "CAIR" refers to CAIR Foundation, Inc. d/b/a Council on American Islamic Relations and CAIR, as well as its predecessors, parents, affiliates, subsidiaries, agents, officers, employees, directors, investigators, attorneys, representatives or any other persons acting or purporting to act on its behalf or acting under its control.

k.     "Saroya" means Defendant Lori Saroya, by whatever name, and any attorneys, representatives or other persons acting on her behalf.

l.     "Nihad Awad" refers to the individual by that name, whether or not he has used the names Nihad Awad, Nihad Hamad, Nihad Hammad, Nihad A. Hammad and Nihad A. Hemad.

m.     "Ibrahim Hooper" refers to the individual by that name, whether or not he has used the name Carey D. Hooper or Carey Douglas Hooper.

n.     If the requested documents are maintained in a file, the file folder is included in the request for production of those documents.

## DOCUMENTS REQUESTS

**Request No. 1**
All documents referring or relating to Saroya, or in any way concerning Saroya, by whatever name.

**Request No. 2**

39019937.1                                          5

All documents referring or relating to or reflecting or constituting communications between Saroya or any of Your officers, employees or directors, past or present.

### Request No. 3

All documents referring or relating to or reflecting or constituting communications by any of Your officers, employees or directors, past or present, referring to or regarding Saroya.

### Request No. 4

All documents referring or relating to or reflecting or constituting evidence that Saroya has ever engaged in "harassment" or "abusive" conduct of any kind.

### Request No. 5

All documents referring or relating to or reflecting or constituting evidence that statements by Saroya have adversely affected Your or CAIR's fundraising or revenue.

### Request No. 6

All documents referring or relating to or reflecting donations, gifts or grants to You.

### Request No. 7

All documents referring or relating to or reflecting lawsuits or administrative claims filed by any person, entity or agency against You.

### Request No. 8

All documents referring or relating to or reflecting or constituting lawsuits or administrative claims filed by any person, entity or agency against You.

### Request No. 9

All documents referring or relating to or reflecting or constituting proposed or executed settlement agreements between You and any present or former employee, including but not limited to documents reflecting payments made to such individuals and any confidentiality or non-disclosure agreement with such individuals.

### Request No. 10

All documents referring or relating to or reflecting or constituting claims, complaints, reports or allegations by any present or former employee concerning allegations of religious, sexual or gender discrimination, sexual harassment or retaliation against You or against any of Your officers, directors or employees.

### Request No. 11

All documents referring or relating to or reflecting or constituting threatened litigation, claims of defamation or cease and desist demands communicated by You.

### Request No. 12

6

All documents referring or relating to or reflecting any investigation or factfinding of any kind conducted by or on behalf of You related to any claim of religious, gender or sexual discrimination, sexual harassment or retaliation.

### Request No. 13
All documents referring or relating to or reflecting any complaint, claim or other communication alleging misconduct, non-compliance with ethical standards or other behavior by Hassan Shibly, or in any way regarding Imran Shibly.

### Request No. 14
All documents referring or relating to or reflecting or concerning Hassan Shibly, Mejgan Afghan, Susanne Arani, Rifat Malik, or Karen Hernandez.

### Request No. 15
All documents referring or relating to or constituting communications between any of the following individuals and any person or entity in any way related to claims, complaints or allegations of religious, gender or sexual discrimination, sexual harassment or retaliation: (1) Nihad Awad; (2) Ibrahim Hooper; (3) Omar Ali; (4) Danette Zaghari-Mask; (5) Roula Allouch; (6) Masoud Nassimi; (6) Ahmed Al-Shehab; (8) Arlene El-Amin; (9) Sarwat Husain; (10) Zainab Chaudry; (11) Krista Cole; (12) Hussam Ayloush; (13) Ahmed Diwani; (14) Ahmed Bedier; (15) Hassan Shibly; (16) Dawud Walid; (17) Zahra Billoo; (18) Imraan Siddiqi; (19) Iftekhar Hussain; or (20) Julia Shearson.

### Request No. 16
All documents referring or relating to any of the following individuals: (1) Jinan Shbat; (2) Tannaz Hannadi; (3) Miriam Amer; (4) Parvez Ahmed; (5) Sara Sheikh; (6) Michaela Corning; (7) Jessica Wayman; (8) Corina Chang; (9) Alicia Hernandez Strong; (10) Arsalan Iftikhar; (11) Ahmed Bedier; (12) Omer Subhani; (13) Issameldin Mohamed; (14) Sister Taqwa; (15) Ahmed Obaid; (16) Kadiatu Korama; and/or (17) Chokri el-Kotel.

### Request No. 17
All documents referring or relating to or constituting consulting reports, internal or external investigative reports, or other reviews relating in any way to Your management or Your handling of claims or grievances.

### Request No. 18
All documents referring or relating to or constituting the testimony, whether by affidavit, deposition or otherwise of any of Your officers or employees in any judicial or administrative proceeding.

### Request No. 19

All documents referring or relating to regular meetings or conference calls between You, or any of Your officers or employees, and CAIR's Executive Director, CAIR chapter officials or CAIR senior staff.

### Request No. 20

All documents referring or relating to or reflecting the work of any committee established in the 2018-2019 timeframe to evaluate CAIR's finances and related matters, including but not limited to any reports, findings or recommendations issued by the committee and any material provided to members of the committee or used by the committee in its work.

### Request No. 21

All documents referring or relating to or reflecting or constituting allegations of misconduct by Zainab Chaudry whether by any CAIR employee, any employee of You or any CAIR chapter or affiliate, or by any third party.

### Request No. 22

All documents referring or relating to or reflecting any communication by or on behalf of You and any news or media organization, or any journalist, including but not limited to, National Public Radio, regarding Hassan Shibly.

### Request No. 23

All documents referring or relating to or reflecting meetings or communications regarding fundraising, donations, contributions or grants with any of the following individuals: Yasin Aktay, Mehmet Gormez, Serdar Kilic, Mehdi Eker or Ali Sarikaya.

### Request No. 24

All documents referring or relating to or reflecting or constituting communications between You, or any of your officers or employees, and any officer, director or employee of any CAIR chapter or affiliate regarding allegations of religious, gender or sexual discrimination, sexual harassment or assault or retaliation.

### Request No. 25

All documents referring or relating to or reflecting or constituting tax filings of any kind by or on behalf of You, including all schedules and amendments.

### Request No. 26

All documents referring or relating to or reflecting compensation paid to Your officers or directors.

### Request No. 27

All documents referring or relating to or reflecting or constituting communications relating to the practice of law or the purported practice of law, or the provision of legal services or

39019937.1

8

the purported provision of legal services, by Morris Days, Roman Iqbal, Danette Zachary-Mask and Lena Masri.

## Request No. 28

A sworn affidavit or declaration from an appropriate custodian of record attesting to that person's knowledge that the documents produced pursuant to this subpoena are authentic records of Your organization and have been/are kept in the course of Your regularly conducted business.

# EXHIBIT B

## DECLARATION OF HAARIS AHMAD IN SUPPORT OF NON-PARTY CAIR-MI'S MOTION TO QUASH DEFENDANT'S SUBPOENA *DUCES TECUM*

HAARIS AHMAD, declares, pursuant to U.S.C. §1746, that:

1. I was the former Executive Director for Council on American Islamic Relations, Michigan ("CAIR-MI") and currently hold the positions of President and Legal Advocacy Chair for CAIR-MI's Board.

2. I was the Executive Director of CAIR-MI from September 2001 to August 2003.

3. I have been on the Board of CAIR-MI from August 2003 to Present.

4. I am personally familiar with the structure and operations of CAIR-MI and its relationship to Plaintiff, CAIR Foundation, Inc., d/b/a/ Council on American-Islamic Relations ("CAIR").

5. The Mission of CAIR-MI is to "enhance the understanding of Islam, encourage dialogue, protect civil liberties, empower American Muslims and build coalitions that promote justice and mutual understanding through education, mediation, media and the law."

6. CAIR-MI is a Michigan nonprofit corporation registered and in good standing as a non-profit corporation with the State of Michigan's Department of Licensing and Regulatory Affairs ("LARA").

7. CAIR-MI has independent recognized 501(c)3 status from the United States Internal Revenue Service as a charitable organization.

8. CAIR, distinct from CAIR-MI, is a 501(c)3 recognized District of Columbia non-profit corporation that has registered and trademarked the logo and name CAIR with the U.S. Patent and Trademark Office. (https://tsdr.uspto.gov/#caseNumber=88359909&caseType=SERIAL_NO&searchType=statusSearch).

1

9. CAIR-MI is a licensee of CAIR pursuant to an affiliation agreement between CAIR-MI and CAIR that provides that CAIR-MI is authorized to utilize the branding and trademark of CAIR so long as CAIR-MI remains current with payment of its affiliation fees.

10. CAIR-MI is a separate and distinct legal entity from CAIR.

11. CAIR-MI is controlled and managed solely by the board of directors of CAIR-MI.

12. CAIR-MI's employment practices, budgets, and finances are, and have been, controlled by CAIR-MI with no approval or interference from CAIR.

13. I have reviewed the Defendant's subpoena duces tecum.

14. The entirety of the requests is exceedingly broad, and includes the following language "[a]ll documents referring or relating to Saroya, or in any way concerning Saroya, by whatever name," and "[a]ll documents referring to or relating to or reflecting or constituting communications between Saroya or any of Your officers, employees, or directors, past or present."

15. Nearly all of the documents, including data, retained by CAIR-MI that are potentially responsive to this subpoena are not stored in a manner susceptible to computer search and retrieval nor otherwise indexed in any meaningful way or inventoried; consequently, compliance with Defendant's subpoena *duces tecum* would require searching by hand, document by document, page by page.

16. There is no limitation on the time frame for when the Defendant has requested production of documents pursuant to her subpoena *duces tecum* and CAIR-MI has been in operation for over twenty-years.

17. CAIR-MI has a total of three (3) full-time employees and one (1) part-time employee, none of whom has any full and/or part-time information technology or computer operator designation or duties.

18. CAIR-MI employees work long hours to perform their official job duties and are inundated with demands on their time and energy.

19. To comply with Defendant's subpoena, CAIR-MI would need to hire full time employees or contractors to go through boxes and cabinets of documents that could take a considerable amount of time.

20. Furthermore, CAIR-MI does not utilize, own, or operate under a local networking system, nor does CAIR-MI own, operate or utilize a central document or data storage system. Each individual employee, officer, agent of CAIR-MI both past and present have created, stored or otherwise saved documents on their individual computers many of which were disposed of in a compliant manner in August of 2020 when CAIR-MI moved offices from Farmington Hills, Michigan to its current location in Canton, Michigan.

21. All emails used by CAIR-MI staff are on a server run, managed, and controlled by CAIR. All new employees of CAIR-MI must submit an application to CAIR for the creation of an email address and access to Microsoft Outlook. CAIR has access to all work emails of CAIR-MI staff.

22. It will be very burdensome and time-consuming for non-party CAIR-MI staff to find relevant emails pertaining to Defendant. This problem compounded by the fact that CAIR-MI employees are on several listservs created, controlled, and managed by CAIR which potentially contain thousands of emails on which Defendant is copied or has participated in dealing with matters which are mostly administrative and not related to the current lawsuit. CAIR has complete access to these listservs and corresponding threads.

23. CAIR-MI has not alleged any misconduct by Defendant Saroya.

24. CAIR-MI did not participate in drafting the Complaint by CAIR or its attorneys.

3

25. CAIR-MI did not provide information to CAIR or its attorneys for use in drafting the Complaint.

26. CAIR-MI has not claimed any financial losses or organizational detriment CAIR-MI suffered that are attributable to Defendant Saroya.

27. I have observed the effects of political polarization in Michigan, particularly characterizing Muslim-Americans as enemies of the United States, terrorist, and/or untrustworthy.

28. CAIR-MI's name has been mentioned by elected officials in Michigan as has the name of our executive director, Dawud Walid, in an attempt to characterize CAIR-MI as untrustworthy and supporting terrorism as enemies of the United States.

29. CAIR-MI has received harassing and threatening phone calls and letters from the public for over twenty years and in 2017 was warned by the Farmington Hills Police Department that the CAIR-MI office was being targeted for a possibly violent attack prompting police officers to visit the office to deliver the warning and to step up patrols in and around the vicinity of its office for period of time.

30. CAIR-MI maintains the anonymity of its contributors to the maximum extent possible under the law, largely due to the political polarization and the way it chills contributors.

31. Request No. 6 seeks "[a]ll documents referring to or relating to or reflecting donations, gifts, or grants to you."

32. I believe the First Amendment to the United States Constitution protects the freedom of CAIR-MI to engage in its activities and associate with its contributors while maintaining to the maximum extent permitted by law the anonymity of those contributors.

33. Complying with Request No. 6 would require disclosure of privileged information.

4

34. Requests No(s) 7-12, 24 seek "[a]ll documents referring to relating to or reflecting or constituting" all claims or allegations made against CAIR-MI, including those by present or former employees and confidentiality or non-disclosure agreements between CAIR-MI and those present or former employees.

35. Complying with Requests No(s) 7-12, 24 would require production of employee personnel files, records or references to discipline, and confidential private and trade secrets information.

36. Requests No(s). 13-16, 21-23 seek "[a]ll documents referring or relating to" named individuals.

37. Only one of those named individuals, Dawud Walid, Executive Director of CAIR-MI, were employed by CAIR-MI or involved in any non-trivial way with the activities of CAIR-MI.

38. Producing all documents referring or relating to Dawud Walid is essentially a request for almost every record of CAIR-MI as he is the Executive Director.

39. Requests No(s). 25 and 26 seek "[a]ll documents referring or reflecting or constituting tax filings of any kind by or on behalf of You, including all schedules and amendments" and those on "compensation paid to Your officers or directors."

40. Unless required by law, CAIR-MI does not publish tax filings sought by Request No.25 or the compensation paid to its officers or directors and instead treats them and the information they may contain as confidential trade secrets. CAIR-MI's 990 filing with the IRS is publicly available.

41. Complying with Request No. 25 would invade the protected secrecy of tax filings and compensation information.

42. Request No. 27 seeks "[a]ll documents referring or relating to or reflecting or constituting communications relating to the practice of law or the purported practice of law, or the provision

of legal services, or the purported provision of legal services by Morris Days, Roman Iqbal, Dannette Zachary-Mask and Lena Masri."

43. Morris Days was employed by CAIR or a chapter in Herndon, Virginia and was never employed, supervised, or engaged at any level with any position or protection involving CAIR-MI.

44. Danette Zachary-Mask has been a Non-Profit and Compliance Attorney for CAIR and once headed the Orlando, Florida CAIR chapter; she was never employed, supervised or actively engaged in any position or project relating the practice of law or the real or purported provision of legal services by CAIR-MI, though she had provided some Board training and guidance relating to CAIR-MI corporate structure that did not involve Defendant.

45. Lena F. Masri is the National Litigation Director, General Counsel, and Acting Civil Rights Director of CAIR, and was previously Legal Director of CAIR-MI until around February 2017. None of the cases she handled at CAIR-MI involved Defendant.

46. To the best of my knowledge, no CAIR-MI staffer has had any contact since November 2019 with Defendant Saroya.

47. To the best of my knowledge, Defendant Saroya has never visited the CAIR-MI office during her tenure at CAIR.

48. To the best of my knowledge, employees of CAIR-MI did not regularly interact with Defendant Saroya during her tenure at CAIR.

49. To the best of my knowledge, none of CAIR-MI's attorneys practice of law or provision of legal services has involved in any non-trivial way Defendant Saroya.

50. Complying with Request No. 27 would require production of attorney-client communications and/or work product.

51. Apart from a file started upon receiving Defendant's subpoena *duces tecum*, I do not recall CAIR-MI ever maintaining a paper or electronic file entitled "Saroya" or compiling documents based on Defendant Saroya's duties while employed with CAIR.

52. CAIR-MI was unaware of CAIR's lawsuit against Defendant Saroya until it was filed and CAIR-MI has not and does not maintain a paper or electronic file related to that lawsuit.

53. For the reasons reflected in the paragraphs above, enforcing Defendant's *subpoena duces tecum* would subject CAIR-MI to an undue burden, intrude upon privileged information, expose CAIR-MI and its supporters to harassment, and inflict a scope of discovery grossly disproportionate with Defendants articulated needs.

Executed this 23rd Day of November 2021.

By:_____
Haaris Ahmad

# EXHIBIT C



# UNITED STATES OF AMERICA

## The State of Michigan

## Department of Licensing and Regulatory Affairs

### Lansing, Michigan

This is to Certify That

*CAIR MICHIGAN, INC.*

*was validly Incorporated on May 1 , 2000 as a Michigan nonprofit corporation, and said corporation is validly in existence under the laws of this state.*

*This certificate is issued pursuant to the provisions of 1982 PA 162 to attest to the fact that the corporation is in good standing in Michigan as of this date and is duly authorized to conduct affairs in Michigan and for no other purpose.*

*This certificate is in due form, made by me as the proper officer, and is entitled to have full faith and credit given it in every court and office within the United States.*



*In testimony whereof, I have hereunto set my hand, in the City of Lansing, this 23rd day of November , 2021.*

*Linda Clegg, Director*

*Corporations, Securities & Commercial Licensing Bureau*

Sent by electronic transmission

Certificate Number: 21110583308

Verify this certificate at: URL to eCertificate Verification Search http://www.michigan.gov/corpverifycertificate.